CITY OF AUDUBON et al., Appellees, v. IOWA LIGHT, HEAT & POWER COMPANY, Appellant.

INJUNCTION: Public Utility Rates. A public utility should not be temporarily enjoined from charging a rate in excess of the rate fixed by ordinance when it is made to appear (1) that the ordinance rate is, *prima facie*, confiscatory; (2) that the council, on proper application by the utility, has refused to entertain so much as an investigation into the inadequacy of the ordinance rate; and (3) that the utility offers to deposit the excess charge with a trustee until final decree is entered.

*Appeal from Audubon District Court.*—O. D. WHEELER, Judge.

FEBRUARY 14, 1922.

SUIT in equity, wherein the plaintiffs sought to restrain the defendant, a public utility, from putting into effect a rate for its product in the city of Audubon, Iowa, higher than provided by ordinance. A temporary injunction was granted, from which order defendant appeals.—*Reversed.*

*Ralph Maclean,* for appellant.

*Cosson & Francis* and *Mantz & White,* for appellees.

ARTHUR, J.—The petition shows, among other things, that in 1915 defendant's grantors were granted a franchise, which they accepted, to operate an electric light and power plant in Audubon for a period of years, the ordinance fixing the rates at "13 cents for the first kilowatt, 10 cents for the balance in any one month;" that the company operated under the franchise rates until in the month of November, 1918, when it

notified plaintiff city and its inhabitants that it would increase the rates to 15 cents per kilowatt. Such allegations are supported by a stipulation of facts.

Defendant answered, admitting that it has a franchise, and that, from the date of the granting thereof until November, 1918, it furnished service at the rate specified in the ordinance, and then increased the rate to 15 cents per kilowatt.

As an affirmative defense, the answer alleges that the cost of materials, such as coal, oil, and other essential materials used in the manufacture and distribution of electricity, have increased from 25 per cent to 150 per cent, in the six months just preceding the commencement of the action, and have so increased defendant's operating expenses that the revenue derived from the ordinance rates will not provide sufficient revenue to pay operating expenses, depreciation, and any sum for return on the value of the plant.

Defendant also alleged that it has numerous customers in Audubon whose bills are small; and that, if the defendant should charge the ordinance rates, and the said rates should be declared null and void, the increase desired would be wholly lost to defendant, because the amounts would be so small that the cost of collection would exceed the amount realized, and thereby defendant would suffer irreparable injury.

The answer also alleges that the enforcement of the ordinance rates would be the taking of defendant's property without compensation and without due process of law, and would deny to the defendant the equal protection of law, in violation of the terms of the Constitution of the state of Iowa and the Constitution of the United States.

Defendant further alleges, and it is admitted by plaintiffs, that the Audubon ''council has failed to take any official action looking to the changing of said rates as designated in said franchise ordinance, although requested so to do by the defendant.'' This charge is further explained by Paragraph 6 of defendant's answer, wherein it is asserted that, in March, 1918, defendant presented to the council the facts alleged ''requesting that said council fix the rate to be charged by this defendant to its customers in the said city of Audubon, Iowa, at 15 cents per kilowatt hour for electric current for lighting purposes, with a dis-

count of 5 per cent thereon if bills were paid within 10 days after the first of the month succeeding the month in which current was consumed. * * * And this defendant has submitted to said council a statement of the value of the property; * * * and has offered to submit its books to said city for examination, * * * but the said council has neglected and refused to make an independent investigation of the propriety of the rates, or to accept the statement of this defendant that said rates were not compensatory, and has refused to fix a fair and reasonable rate which the defendant is entitled to charge, collect, and receive for electric service furnished to the said city and the consumers of electricity in said city.''

The answer also asserted that no temporary injunction should be issued, since the defendant offered to deposit with a trustee to be named by the court, as a fund in court, all sums collected by the defendant company in excess of the ordinance rates, said fund to be held until final determination of the action, and then customers repaid, if found entitled thereto.

The answer was verified, and in further support of the answer, the defendant offered the affidavit of Fred Plaehn, local manager for defendant in the city of Audubon.

The case presented, so far as temporary injunction remedy is involved, is covered fully and must be controlled by our holdings in *Snodgrass v. McDaniel,* 144 Iowa 674, and *City of Fort Dodge v. Fort Dodge Tel. Co.,* 172 Iowa 638. The discussion in the latter case is peculiarly significant in the case before us. We said:

''The purpose of a temporary writ is, ordinarily, to maintain the *status quo* of the parties and to so protect the subject of the litigation that the fruits thereof shall not be lost to the successful party. The effect of the temporary writ in this case was not to maintain the *status quo,* but rather to destroy it with a stroke of the pen, without warning or hearing. The effect of such temporary writ, if continued, would have been to work an irreparable injury to the defendant before it could reach a hearing on the merits of the controversy. In determining whether a temporary writ of injunction shall issue, or whether it shall stand after issued, the court will look to the situation of both parties, the defendant as well as the plaintiff, and will

exercise its power to issue or to dissolve with a view to the relative amount of injury to be suffered by the parties respectively. When a temporary injunction will cause great injury to a defendant and be of comparatively little benefit to the plaintiff, it is a proper exercise of judicial discretion to refuse the writ.''

It appears that, upon the issuance of the temporary injunction complained of, on application presented by defendant, this court entered an order staying and suspending the temporary injunction, and directing that the amount of money collected above the ordinance rate be placed with a trustee, to be held as a fund in court until the disposition of this case. Such order should be and is continued in force until the final disposition of this cause on its merits.

Questions of pleading are raised that the affirmative allegations of the answer are mere conclusions, and not definite statements of concrete facts, and also as to the verification of the answer. No attack upon the answer was made by demurrer or motion, and we think the answer may be deemed sufficient for the purpose of hearing on application for temporary injunction.

Other questions are raised, going to the merits of the case, which we deem unnecessary and improper to be considered here, and we refrain from discussing them on this appeal.

The order granting the temporary injunction is reversed, and the temporary injunction is dissolved.—*Reversed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.